No. 3--05--0897

_____

Filed August 9, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05--CF--877 |
| LAVAR BRIDGEWATER, | ) ) | Honorable Carla Alessio-Goode, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the opinion of the court:

_____


The State charged the defendant, Lavar Bridgewater, with aggravated unlawful use of a weapon (720 ILCS 5/24--1.6(a)(1)(a)(3)(B) (West 2004)).  The trial court granted the defendant's motion to suppress the evidence.  On appeal, the State argues that the court erred by granting the motion to suppress.  We reverse and remand.

BACKGROUND

The trial court held a hearing on the motion to suppress on October 5, 2005.  At the hearing, Officer John Morrow testified that he was a member of the Bolingbrook police department on May 1, 2005, when the incident in question occurred.  Morrow was

on stationary patrol in his squad car on Boughton Road.  When the defendant's car passed Morrow's location, the squad car's radar indicated that the defendant's vehicle was traveling at 59 miles per hour in a 35-mile-per-hour zone.  The officer also observed that the defendant's automobile "had tinted windows on both the driver's side and passenger side front windows."  Morrow activated his squad car's emergency lights and siren and pursued the defendant's vehicle.

The defendant's car and Morrow's squad car stopped at a traffic light.  The defendant's vehicle turned right at that intersection, traveled approximately 200 feet, and then turned into the parking lot of a White Hen Pantry convenience store.  The defendant parked his car immediately to the right of the front doors of the store.  Morrow parked his squad car directly behind the defendant's car.

According to Morrow, the defendant and the officer got out of their respective vehicles simultaneously.  The defendant turned and looked at Morrow and then began to walk toward the store.  The officer said, "I initially summoned him a couple times when he exited the vehicle to step back in the vehicle and then to come back and talk to me.  He turned around and said that he was going to go get something to eat.  I told him--I said he needs to come back to his vehicle, and at that point he says I'm

2

not in the car, turned around and walked towards the White Hen and went inside."

At this time, Morrow called for backup. The officer then entered the store. Morrow stated, "I went over and talked to [the defendant], said he needs to come back outside, I stopped him for speeding, he needs to show me driver's license and insurance." Morrow also advised the defendant that the officer had stopped him because of his car's tinted windows. After Morrow asked the defendant to come outside the store three or four times, the defendant walked out of the building, and the officer followed. Morrow stated that normally a defendant would not be arrested for speeding or driving a vehicle with tinted windows.

Morrow testified that he again asked the defendant for his driver's license and proof of insurance on the sidewalk outside the store, directly in front of the defendant's car. The defendant told Morrow that he did not have to give the officer anything because he had done nothing wrong.

The officer stated that the defendant then put his hands in his pants pockets. The officer ordered the defendant to take his hands out of his pockets two or three times. When the defendant did not comply, Morrow told the defendant to put his hands on the window of the store, and the defendant refused. The officer said, "I *** came up behind him, put my hand on his right

3

shoulder and trapped his right arm in his pants and basically put him up against the window and pulled his hands out of his pockets to put them up on the window." Morrow arrested the defendant for obstructing a peace officer, handcuffed the defendant, and placed him in the squad car.

By this time, two officers had arrived in response to Morrow's call for backup. Morrow advised the officers that he had arrested the defendant and asked the officers to search the defendant's vehicle. As Morrow was driving toward the exit of the parking lot, Morrow saw one of the officers wave an ammunition clip in his hand. Morrow then drove back toward the defendant's car. The other officer told Morrow that he had found the loaded ammunition clip in the console of the defendant's vehicle. While the defendant remained handcuffed in Morrow's squad car, Morrow joined in the search. Morrow discovered a handgun under the front passenger seat of the defendant's car. According to Morrow, the ammunition clip fit the handgun. Morrow then transported the defendant to the police station. The police towed the defendant's car to a police lot.

The defendant testified that he did not see the squad car's emergency lights or hear its siren until he stopped at the store. He said that when he was at the door of the building, he heard Morrow order him to return to his car. The defendant ignored Morrow's command. The defendant then walked into the store, and

4

the officer followed.  According to the defendant, Morrow did not ask him for his driver's license and proof of insurance inside the store.  The officer asked the defendant to come outside twice.  The defendant walked out of the store, Morrow followed, and the officer arrested him immediately.  After Morrow handcuffed the defendant, the officer asked about his driver's license and proof of insurance.  The defendant denied that he had placed his hands in his pockets.  He admitted, however, that he had been speeding and that his car had tinted windows.  The defendant also agreed that the handgun and ammunition clip found in his car belonged to him.

Following the hearing, the prosecutor argued that the officers' search of the defendant's car was justified both as a search incident to his arrest and as an inventory search prior to towing the car.  During this argument, the prosecutor did not cite Thornton v. United States, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004).  The court granted the motion to suppress.

The State filed a motion to reconsider in which it cited Thornton.  At the hearing on the motion to reconsider, the prosecutor argued that the holding of Thornton applied to this case regarding a search incident to arrest.  The prosecutor again contended that the search was valid as an inventory search.

5

Defense counsel argued that <u>Thornton</u> was distinguishable from the present case because the defendant in this case was initially stopped for petty offenses whereas the defendant in <u>Thornton</u> was not initially stopped for a petty offense. The defendant's attorney submitted that the defendant could not have been arrested for the petty offenses and that the offense for which he was arrested was too remote in time to justify searching the defendant's car incident to that arrest.

The trial court agreed with the defendant that <u>Thornton</u> was distinguishable from the instant case. The court found that the arrest was too remote in time from Morrow's original purpose for stopping the defendant. The court stated that there was no nexus between the defendant's arrest and the officers' search of his car. The court, therefore, denied the State's motion to reconsider. The State appealed.

ARGUMENT

The State contends that the trial court erred in denying its motion to reconsider. Specifically, the State argues that the holding of <u>Thornton</u>, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127, is applicable to this case. We note that the State argued to the trial court that the search was also justified as an inventory search. The State, however, does not renew the inventory search argument on appeal.

6

The defendant submits that Thornton is distinguishable from the present case. Specifically, the defendant contends that he could not have been arrested for the traffic offenses for which he was originally stopped, whereas the defendant in Thornton could have been arrested for the traffic offense that he committed. The instant defendant also submits that, unlike the defendant in Thornton, he was arrested for conduct that occurred outside his vehicle.

An appellate court reviews de novo the trial court's ultimate ruling concerning whether suppression of the evidence was warranted. People v. Luedemann, 222 Ill. 2d 530, 857 N.E.2d 187 (2006).

In Thornton, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127, an officer in an unmarked squad car noticed that the license plate on the defendant's car did not match the car. Before the officer could initiate a traffic stop, the defendant parked his car and exited the vehicle. The officer then parked his squad car near the defendant's car. When the officer questioned the defendant outside his car, the defendant exhibited suspicious behavior. The officer then conducted a pat-down search of the defendant. During the frisk, the officer discovered illegal drugs on the defendant's person. The officer arrested the defendant, handcuffed him, and placed him in the squad car. The officer then conducted a search of the

7

defendant's car incident to the arrest. During the search, the officer discovered a handgun. The trial court denied the defendant's motion to suppress the handgun, and ultimately the United States Supreme Court affirmed the trial court's decision.

The defendant in Thornton argued to the Supreme Court that the search incident to his arrest was not justified because the officer did not initiate contact with him while he was in his car. The majority opinion in Thornton reviewed the holdings of previous Supreme Court cases concerning searches incident to arrest. In Chimel v. California, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), the Court held that officers were justified in conducting a search incident to arrest only to search for weapons the defendant might use or evidence that he might conceal or destroy. The Chimel Court limited such searches to the area within a defendant's immediate control, defined as the area within which a defendant might be able to reach a weapon or a piece of evidence.

In New York v. Belton, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the Court extended the rule of Chimel to traffic stops. The Belton holding permitted officers to search a vehicle's passenger compartment, and closed containers within the compartment, incident to the arrest of either occupants or recent occupants of a car.

In _Thornton_, the Court noted that its ruling in _Belton_ did not depend upon whether the officer initiated contact with the defendant while the defendant was in his car, or while he was out of his car. The Court, therefore, rejected the defendant's argument in _Thornton_ and affirmed the trial court's ruling.

The lead opinion in _Thornton_ was written by Justice Rehnquist and was joined by a majority of the justices except for footnote 4, which criticized Justice Scalia's concurrence (which we discuss below). Justices Kennedy, Thomas, and Breyer joined the opinion in full. Justice Scalia, joined by Justice Ginsburg, concurred in the judgment. In his concurring opinion, Scalia stated that the majority had stretched the doctrine of search incident to arrest "beyond its breaking point." _Thornton_, 541 U.S. at 625, 158 L. Ed. 2d at 916, 124 S. Ct. at 2133, (Scalia, J., concurring, joined by Ginsburg, J.). Scalia noted that in _Thornton_, the defendant was handcuffed and in the squad car at the time of the search. Therefore, the original rationale of _Chimel_ did not apply because the possibility that the defendant might reach a weapon or evidence in his vehicle was remote in the extreme. Scalia stated, however, that he would affirm in _Thornton_ on the basis of a search for evidence of the defendant's crime, _i.e.,_ possession of illegal drugs, without regard to whether the defendant might be able to reach a weapon or evidence.

In <u>Thornton</u>, Justice O'Connor concurred in part, but dissented with regard to footnote 4.  O'Connor acknowledged that the majority's opinion followed logically from the holding of <u>Belton</u>.  However, she found <u>Belton</u>'s holding to rest on a "shaky foundation."  <u>Thornton</u>, 541 U.S. at 624, 158 L. Ed. 2d at 915, 124 S. Ct. at 2133, (O'Connor, J., concurring in part).  She expressed dissatisfaction with the state of the law concerning search of a vehicle incident to arrest.  She found Scalia's arguments to be persuasive, but would not join Scalia's concurrence because the issues Scalia raised had not been briefed by the parties.  Justices Stevens and Souter dissented.

Although we agree with the opinions of Justices O'Connor, Scalia, Ginsburg, Stevens, and Souter in <u>Thornton</u>, with regard to <u>Chimel</u>'s original rationale for a search incident to an arrest, we must follow the majority opinions in <u>Thornton</u> and <u>Belton</u>.  The defendant in this case was a recent occupant of his car when he was arrested.  The defendant's arrest was remote in time only because of his failure to comply with a police officer's orders during a lawful traffic stop for violations the defendant admitted that he had committed.  Under the holdings of <u>Thornton</u> and <u>Belton</u>, the officers were justified in conducting a search of the defendant's vehicle incident to that arrest.

The defendant is incorrect to assert that he could not have been arrested for the traffic violations for which he was

10

originally stopped. In <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001), the Supreme Court ruled that a defendant may be arrested for a traffic violation punishable only by a fine, such as failure to wear seat belts. Therefore, we disagree with the defendant that <u>Thornton</u> is distinguishable from the present case based on whether he could have been arrested for his traffic violations.

In his petition for rehearing, the defendant contends that the holding of <u>Atwater</u> is inapplicable to the present case because no court in Illinois has explicitly followed its ruling. We note that in <u>People v. Caballes</u>, 221 Ill. 2d 282, 851 N.E.2d 26 (2006), the Illinois Supreme Court stated that its search and seizure jurisprudence was in limited lockstep with the rulings of the United States Supreme Court. In <u>Caballes</u>, the court reviewed the limitations to the lockstep principle based on differences between the Illinois Constitution and the United States Constitution. The <u>Caballes</u> court did not cite <u>Atwater</u> or Illinois cases related to <u>Atwater</u> in its discussion of limitations on the lockstep doctrine. Therefore, except for the limitations noted in <u>Caballes</u>, Illinois courts are bound to follow the United States Supreme Court's holdings in lockstep with regard to search and seizure cases, including the holding of <u>Atwater</u>.

11

Even assuming, arguendo, that the holding of Atwater is inapplicable to the present case, we reject the defendant's argument that Thornton is inapposite because the defendant could not have been arrested for his traffic offense. Thornton is not distinguishable on this basis. The holding of Thornton did not depend on whether the defendant could have been arrested for his traffic offense. The defendant in Thornton was arrested as a result of a pat-down search that was unrelated to his traffic offense. Under the instant defendant's rationale, he was arrested for resisting a peace officer, which he claims was also unrelated to his traffic offense. Thus, the defendant is incorrect that the ruling of Thornton is inapposite to the present case.

Furthermore, we note that this defendant's arrest for resisting a peace officer was related to the traffic offense for which the officer initiated the traffic stop. The defendant attempted to evade the consequences of a lawful traffic stop by parking his car, ignoring the officer's commands to stay by his vehicle, and walking into a business establishment. He was arrested because he resisted multiple attempts by the officer to effect a lawful traffic stop. Therefore, the facts of this case are even more closely related to the holding of Belton, upon which Thornton relied, than the facts in Thornton because the

12

defendant was arrested for conduct that was related to his vehicle.

We also disagree with the defendant that Thornton is distinguishable because, unlike the defendant in that case, the instant defendant was arrested for conduct that occurred outside his vehicle. In Thornton, the defendant was arrested because he possessed illegal drugs that were found on his person outside the vehicle. The defendant in Thornton, like the defendant in the present case, was arrested for conduct that occurred outside his vehicle. Thus, we also do not find Thornton to be distinguishable on this basis.

Although we have found no Illinois Supreme Court case which has discussed Thornton, the court has adopted the holding of Belton. People v. Bailey, 159 Ill. 2d 498, 639 N.E.2d 1278 (1994). As we stated above, with limitations not pertinent to this case, on search and seizure issues our supreme court has followed the approach taken by the United States Supreme Court. See Caballes, 221 Ill. 2d 282, 851 N.E.2d 26. We, therefore, believe the Illinois Supreme Court would adopt the holding of Thornton as well.

In summary, although we disagree with the rationale of Thornton, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127, we are bound by its ruling. Under the holdings of Thornton and Belton, the officers in this case were justified in conducting a

13

search of the defendant's vehicle incident to his arrest.  We rule, therefore, that the trial court erred as a matter of law by denying the State's motion to reconsider and granting the defendant's motion to suppress the evidence.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Will County circuit court and remand the matter for further proceedings.

Reversed and remanded.

LYTTON, P.J., and CARTER, J., concur.