[No. 27292-3-III.   Division Three.   October 27, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. PAVEL DANILOVITCH GRIB, *Appellant*.

*David L. Donnan, Lila J. Silverstein,* and *Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*John D. Knodell, Prosecuting Attorney, Albert H. Lin, Deputy,* for respondent.

¶1 SCHULTHEIS, C.J. — Police in Grant County received a report that a vehicle matching the description of Pavel Grib's car was driving erratically. Officers located Mr. Grib's vehicle and attempted to stop him. He led them on a chase that ended when he jumped out of his car and into an irrigation canal and swam to the other side, where police ultimately intercepted and arrested him. At the police

station, he attempted to gain control of an officer's stun gun and bit an officer's leg. Methamphetamine was found in the car, which was searched after Mr. Grib was secured on the other side of the canal. Mr. Grib was convicted of attempting to elude a pursuing police vehicle, possession of methamphetamine, assault in the third degree, disarming a police or jail officer, resisting arrest, and driving under the influence (DUI).

¶2 On appeal, he contends that the trial court erred when it denied his motion to suppress the methamphetamine, arguing that he was secured and not in the area of his car when the search took place. We agree. *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). We therefore reverse the possession conviction as well as the DUI conviction, which was tainted by the erroneously admitted methamphetamine evidence, and remand.

## FACTS

¶3 On July 27, 2007 at about 9 p.m., Jason Todd heard a loud noise in the front yard of his rural Grant County home near Soap Lake, Washington. When he went to investigate, he found a car parked in his flower bed. He approached the driver, Mr. Grib, who said in a thick Russian accent that he thought he had passed out. Mr. Todd, an EMT (emergency medical technician), thought Mr. Grib might be under the influence of drugs or alcohol. Mr. Todd asked Mr. Grib to get out of the car but he refused and drove off, weaving, parking for a short time, and then driving off again. Concerned about Mr. Grib's driving, Mr. Todd called 911 and gave the operator Mr. Grib's license plate number.

¶4 Grant County Deputy Sheriff Earl Romig was dispatched to search for Mr. Grib's car. When he spotted a car matching the description on a gravel road, Deputy Romig yelled at Mr. Grib. Mr. Grib shouted back that he had done nothing wrong and he was not going to stop. Mr. Grib appeared agitated. The deputy suspected that Mr. Grib was driving under the influence.

¶5  A Soap Lake police patrol car pulled behind Mr. Grib's car with its lights on. The officers got out of their car while Mr. Grib continued to drive forward, yelling at them. He then quickly accelerated to 50 m.p.h. on the gravel road, spraying dust and gravel. The law enforcement officers returned to their vehicles and gave chase with lights and sirens.

¶6  Mr. Grib eventually jumped out of his car, leaving it in gear, and swam across the strong current of a 60-foot wide canal. Deputy Romig quickly got out of his patrol car and stopped Mr. Grib's car, put it in park, and removed the keys from the ignition.

¶7  After climbing out of the water on the other side of the canal, Mr. Grib yelled across that he had done nothing wrong and that he would fight anyone who came over to his side of the canal. When a deputy approached and ordered Mr. Grib to the ground, Mr. Grib advanced with his chest puffed out, his fists clenched, and his arms flailing. The deputy knocked Mr. Grib to the ground by deploying a stun gun. Mr. Grib continued to struggle and fight while being handcuffed. The deputy again used the stun gun, allowing law enforcement officers to take Mr. Grib into custody. Mr. Grib told the officers he had a knife in his pocket, which the officers seized. The officers deemed Mr. Grib too combative to allow them to administer the standard DUI tests. Once Mr. Grib was secured, Deputy Romig searched Mr. Grib's car on the other side of the canal and found 1.8 grams of methamphetamine in the glove box.

¶8  On the ride to jail, Mr. Grib continued to be very aggressive and defiant, threatening to attack an officer. He struggled with correctional officers, grabbed an officer's stun gun, and then bit the officer on the leg as they wrestled on the floor.

¶9  Mr. Grib was charged with two counts of resisting arrest and one count of attempting to elude a pursuing police vehicle, possession of methamphetamine, assault in the third degree, disarming a police or jail officer, unlawful possession of a dangerous weapon, DUI, and bail jumping.

¶10 After a jury trial, Mr. Grib was found not guilty of unlawful possession of a weapon and bail jumping. He was found guilty of the lesser offense of attempt to disarm a police or jail officer and guilty of the remaining offenses.

## DISCUSSION

¶11 Warrantless searches and seizures may be permitted within the limitations of " 'a few specifically established and well-delineated exceptions' " to the warrant requirements of the Fourth Amendment to the United States Constitution and Washington Constitution article I, section 7. *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). These exceptions are " 'jealously and carefully drawn' " and the "burden rests with the State to prove the presence of one." *State v. Hendrickson*, 129 Wn.2d 61, 72, 71, 917 P.2d 563 (1996) (internal quotation marks omitted) (quoting *State v. Bradley*, 105 Wn.2d 898, 902, 719 P.2d 546 (1986) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971))). A search incident to a lawful arrest is such an exception. *State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996).

¶12 Mr. Grib contends that the court erred by denying his motion to suppress evidence, which the trial court justified as being incident to a lawful arrest. A trial court's conclusions of law in a suppression order are reviewed de novo. *State v. Evans*, 159 Wn.2d 402, 406, 150 P.3d 105 (2007).

¶13 The trial court found that while Mr. Grib was being arrested, Deputy Romig secured Mr. Grib's car, which had been left in gear, put the car in park, and removed the keys. Deputy Romig later searched Mr. Grib's car incident to arrest and found methamphetamine in the unlocked glove compartment. The trial court concluded that "[t]he unlocked glove compartment where the methamphetamine was discovered [was] within the area of control of the defendant

arrested outside the car." Clerk's Papers (CP) at 173 (Conclusion of Law 3.2). Thus, "[t]he search of the unlocked glove compartment incident to arrest is therefore permissible." CP at 173 (Conclusion of Law 3.3).

¶14 Relying on *Gant*, 129 S. Ct. 1710, Mr. Grib asserts that the search was unlawful. In *Gant*, the United States Supreme Court narrowed the circumstances in which a vehicle may be searched incident to its occupant's arrest: "[W]e . . . hold that the *Chimel* [*v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)] rationale authorizes police to search a vehicle incident to a recent occupant's arrest *only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search*."[1] *Gant*, 129 S. Ct. at 1719 (emphasis added).

¶15 Mr. Grib convincingly argues, and the record shows, that he was a considerable distance from his car when it was searched and the canal presented a significant obstacle to his access to the passenger compartment of his car. Furthermore, Mr. Grib had been knocked to the ground by the use of a stun gun and was handcuffed. It cannot be claimed that Mr. Grib was unsecured or within reaching distance. The search is not valid under the justification found by the trial court.

¶16 The State argues that the search of Mr. Grib's vehicle was valid pursuant to the community caretaking doctrine in which a vehicle may be impounded if there is a threat to public safety or impeded traffic and no one is available to remove the vehicle. The State relies on *State v. Ferguson*, 131 Wn. App. 694, 702, 128 P.3d 1271 (2006). *Ferguson* can be easily distinguished because it involved the towing of a car that was suspected to contain an

---

[1] The Court also held that it would be acceptable for officers to search an arrestee's vehicle related to the arrested offense. *Gant*, 129 S. Ct. at 1719 ("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring in judgment))). Because this rationale was not used to justify the search, we do not address it here.

operating methamphetamine lab. Moreover, the trial court in *Ferguson* justified the search on that basis. The trial court here did not.

¶17 The trial court erred by concluding that the search was justified as the car was within Mr. Grib's control at the time of arrest. Any evidence discovered as a result of the search should have been excluded as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Because the methamphetamine evidence involved his drug possession charge as well as the DUI, both charges must be reversed.

¶18 We reverse the convictions for possession of a controlled substance (methamphetamine) and DUI, and we remand for further proceedings consistent with this opinion.

BROWN and KULIK, JJ., concur.

Review denied at 168 Wn.2d 1036 (2010).