F I L E D
**United States Court of Appeals
Tenth Circuit**

**OCT 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellant,

v.

JAMES ELI SUMRALL,

  Defendant-Appellee.

No. 04-5005
(D.C. No. 03-CR-111-K)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge**, McWILLIAMS**, Senior Circuit Judge, and **PORFILIO**, Senior Circuit Judge.[**]

On August 13, 2003, James Eli Sumrall ("defendant") was charged in a two-count indictment filed in the United States District Court for the Northern District of Oklahoma as follows:  In Count 1, defendant was charged with knowingly possessing, on February 18, 2003, an Armsco, .22 caliber revolver and seven live rounds of Winchester

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Neither party requested oral argument. After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Super X .22 caliber ammunition, and that, as of that date, he had been previously convicted of two crimes punishable by imprisonment for a term exceeding one year, those crimes were then identified in the indictment by date and offense, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In the second count of the indictment, defendant was charged with possessing on February 18, 2003, the firearm and ammunition identified in the first count at a time when he was an unlawful user of methamphetamine and marijuana in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

On October 15, 2003, a superseding indictment containing five counts was filed against the defendant in the United States District Court for the Northern District of Oklahoma. Counts 1 and 2 in the superseding indictment were the same as the two counts charged in the original indictment. Count 3 of the superseding indictment charged defendant with a violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2), occurring on February 18, 2003. Count 3 was based on defendant's alleged possession of the loaded Armsco, .22 caliber revolver mentioned in Counts 1 and 2, while he was subject to a restraining order. We are not concerned in this appeal with any of the first three counts in the superseding indictment. Counts 4 and 5 of the superseding indictment are the only two counts that we are concerned with in this appeal.

Count 4 charged the defendant with possessing, on or about October 3, 2003, a Ruger, .22 caliber revolver, five live rounds of Winchester Super X .22 caliber ammunition and one live round of Federal .22 caliber ammunition after having been

previously convicted of the two offenses set forth in Count 1 of the original indictment in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count 5 charged defendant with possessing on October 3, 2003, the firearm and ammunition identified in Count 4 at a time when he was an unlawful user of methamphetamine and marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

The background facts out of which this case arises are not really in any particular dispute. A deputy of the Tulsa County sheriff's office was on patrol on October 3, 2003, when he pulled up at the intersection of South 65th West Avenue and Southwest Boulevard and noticed that a GMC van in front of him had "expired tags." Preparatory to making a "stop," the officer activated his overhead lights. The driver of the van did not immediately stop. Rather, he continued driving and waived his arm out the window, apparently acknowledging that he knew the officer was following him. There was a rather deep ditch on the right hand side of the road. Intermittently, the officer also activated his siren. The driver of the van drove on some five or six blocks, with the officer still following him, where he made a right hand turn onto private property and stopped his van in the backyard of a residence. The property the driver turned onto was a residential/business yard, which, it developed later, he rented. According to the officer, the driver of the van immediately got out of the van and locked the driver's side door. The driver of the van then walked to the back bumper of the van and was met by the officer. The driver of the van was the defendant.

The defendant first asked the officer why he had been stopped. The officer stated that he told the defendant that his van had expired tags. The driver, according to the officer, appeared "very nervous", and seemed to be attempting to go around to the passenger's side of the van. In any event, the officer immediately "cuffed" the defendant, hands behind his back, for "officer safety." After the defendant was handcuffed, but before he was "arrested," the officer ran a records check, and ascertained that the defendant's driver's license had been suspended and that there were several outstanding warrants for his arrest, one of which was based on the indictment returned on August 13, 2003, and mentioned in paragraph one. At this point, the officer "arrested" the defendant and a body search disclosed a marijuana pipe. Defendant, still handcuffed behind his back, was then placed in the back seat of the officer's patrol car, which was stopped about two feet from the defendant's van. A backup officer arrived during the stop, but left on another call believing that the defendant was "secured." The defendant had already surrendered his car keys to the officer and told the officer which key to use to open the car door. The officer opened the car door and proceeded with a search of the interior of the van incident to a possible impoundment of the van. He found a fully loaded Ruger, .22 caliber revolver, close to the passenger seat beneath some trash and papers. Tubing and funnels used for manufacturing methamphetamine were also found. The revolver found in the van was the basis for both Counts 4 and 5. The van and the defendant were then taken to police headquarters.

On December 4, 2003, the defendant apparently filed a motion to dismiss Counts 4 and 5 as being in violation of the double jeopardy clause of the Fifth Amendment. He also apparently filed a motion to sever Counts 4 and 5 for trial purposes. Neither of those motions is in the record before us. On that same date, the defendant also filed a "motion to quash and suppress . . . evidence illegally obtained and which is the basis for the government's prosecution of the defendant in Counts Four and Five of the indictment." That motion is in the present record. The defendant claimed that the search of his van on October 2, 2003, by the Tulsa County Sheriff's Office was in violation of the Fourth Amendment. In support of that argument, counsel argues that the search was not justified either as an "inventory search" or as a "search incident to an arrest."

On December 18, 2003, the government filed a consolidated response to all three of the defendant's pre-trial motions. As to defendant's motion to suppress the use at trial of the loaded .22 caliber Ruger found in a search of his van, the government argued that such did not violate the Fourth Amendment and urged three bases therefor: (1) the search was incident to a lawful arrest; (2) exigent circumstances justified the search, and (3) the firearm was discovered during an inventory search. At the hearing on the motions, held January 5, 2004, the government called the deputy who arrested the defendant. He testified in detail. The defendant did not testify, and his counsel called one witness, a Michael Jones, who was the owner of the property which had been rented by the defendant and the place where the defendant ultimately stopped his van.

On January 12, 2004, the district court entered a detailed order in which it granted defendant's motion to quash and suppress and held that, in view of his ruling on the motion to suppress, the motions to dismiss Counts 4 and 5, or sever them for trial, were rendered moot. In granting defendant's motion to suppress, the district court concluded that the search was neither a valid inventory search in connection with a lawful impoundment nor was the search incident to a lawful arrest. On appeal, the government does not contend that the district court erred in determining that the search was not a valid inventory search. It does contend, however, that the district court erred in holding that the search was not incident to a lawful arrest. The government appeals the district court's suppression order under 18 U.S.C. § 3731. On appeal, the government raises only one issue, which it frames as follows:

> "Whether the district court properly suppressed the firearm seized from defendant's van during a search incident to his arrest."

In our review of a district court's grant, or denial, of a motion to suppress evidence, we accept the district court's finding of facts, unless they are clearly erroneous. *United States v. Zubia-Melendez,* 263 F.3d 1155, 1159 (10th Cir. 2001). However, the final determination of whether a search and seizure is reasonable under the Fourth Amendment is renewed *de novo. Id.* at 1159-60.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated . . . ." There are exceptions to that prohibition. Searches and seizures pursuant to a search warrant based on probable cause are not "unreasonable," and are, of course, recognized by the language of the Fourth Amendment itself. And there are other exceptions, such as an inventory search, a search based on "officer safety," and a "search incident to a lawful arrest." We are only concerned in this case with whether the district court correctly held that the search here involved was <u>not</u> incident to a lawful arrest. We disagree with the district court and hold that the search <u>was</u> incident to a lawful arrest.

The cases bearing on the question as to just what constitutes a search incident to a lawful arrest are legion. In our discussion, we shall begin with *New York v. Belton,* 453 U.S. 454 (1981). In *Belton,* the Supreme Court framed the question there at issue to be as follows:

> "When the occupant of an automobile is subjected to a lawful
> custodial arrest, does the constitutionally permissible scope of
> a search incident to his arrest include the passenger
> compartment of the automobile in which he was riding?"

*Id.* at 455.

The court answered its question in the affirmative. In *Belton,* there were four persons in the car and Belton was apparently a passenger in the car, and not the driver. In our case, the defendant was the driver of the car and was the only occupant therein. In *Belton,* the court stated that "a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the

immediately surrounding area . . . because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *Id.* at 457 (citing *Chimel v. California,* 395 U.S. 752 (1969)). In *Belton,* the Court also cited with approval language from *United States v. Robinson,* 414 U.S. 218 to the effect that "[i]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but also is a 'reasonable' search under that Amendment." *Belton*, 453 U.S. at 459. The ultimate holding in *Belton* was that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of that automobile." *Id.* at 460.

In holding that the search in the instant case was not incident to a lawful arrest, the district court cited, *inter alia, United States v. Lugo,* 978 F.2d 631, 634-5 (10th Cir. 1992) and *United States v. Edwards,* 242 F.3d 928, 937-8 (10th Cir. 2001). In *Lugo*, we reversed the defendant's conviction of possession of cocaine with an intent to distribute and held that the warrantless search of the defendant's van was not justified since the search was conducted at a time when the defendant had been arrested and taken from the scene and was, in fact, miles away from the scene of his arrest in the back seat of a patrol car that was transporting him to a nearby county jail. In so doing, we stated that a "warrantless search incident to an arrest is not valid if it is 'remote in time or place from

the arrest'," citing *Chimel v. California,* 395 U.S. 752, 784 (1969)  In *Edwards,* we also reversed the district court and held that the search of an automobile was <u>not</u> a valid search incident to an arrest when the defendant was "handcuffed, informed . . . that he was under arrest, and placed in the backseat of a patrol car," at the time of the actual search.

We believe a recent case has bearing on the instant one.  *See Thornton v. United States,* 124 S.Ct. 2127 (2004), decided May 24, 2004.  In *Thornton,* the Supreme Court stated that *Belton* had held that when a police officer has made a lawful custodial arrest of an <u>occupant</u> of an automobile, the Fourth Amendment allowed the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest.  In *Thornton*, the Supreme Court extended the rule of *Belton* to cover the situation "where an officer does not make contact until the person arrested has left the vehicle."  In our case, the officer did not make contact with the defendant until after he had exited the van and locked the door and was standing by the side of his van.  In *Thornton,* as in the instant case, the defendant was handcuffed, arrested, and placed in the back seat of the patrol car at the scene of the arrest at the time of the actual search.  Notwithstanding that fact, the Supreme Court in *Thornton* held that the search of the automobile was an incident to a lawful custodial arrest.[1]  We recognize that in *Thornton*, the fact that the defendant at the time of the search was handcuffed and seated in the rear seat of the patrol car at the scene

---

[1]*Thornton* was decided subsequent to the date of the district court's order in the instant case.  However, *Thornton* was addressed by the parties in their briefs filed in this case.

of the arrest apparently was not relied on by the defendant as a ground for holding that the search was not incident to a lawful arrest. The issue resolved in *Thornton* was that the rule of *Belton*, i.e., the lawful arrest of an occupant of an automobile made the ensuing search of the vehicle a search incident to a lawful arrest, was extended to include, not just an "occupant," but would also include a "recent occupant." Such being the case, we decline to hold that the search in the instant case was invalid because the defendant was handcuffed and seated in the patrol car, the Supreme Court in *Thornton* having validated a search as being incident to an arrest where the defendant was also handcuffed and seated in the patrol car, just as the defendant was in the present case.

In sum, the defendant was lawfully arrested and under the facts and circumstances surrounding that arrest, the ensuing search of the front area of the van was incident to that arrest. The facts and circumstances which we rely on are summarized as follows: (1) The defendant was driving a van having "expired tags," and the officer followed the van, intending to make a "stop"; (2) the officer activated his overhead lights and intermittently turned on his siren; (3) the defendant did not stop and drove some five or six blocks where he turned into the backyard of a residence, which he rented; (4) the officer in his patrol car followed the defendant and stopped his patrol car about two feet behind the van; (5) the defendant quickly exited his van and locked the front door; (6) when confronted by the officer, the defendant seemed nervous and fidgety, and the officer handcuffed the defendant for his own safety; (7) the officer made a record check and

determined that there were outstanding warrants for defendant's arrest; (8) the officer arrested defendant and placed him in the rear seat of the patrol car, which was still two feet behind the van; and (9) with a key given him by the defendant, the officer opened the door of the van and found, under papers and trash, a fully loaded Ruger revolver near the passenger seat. Such, to us, is a "search incident to a lawful arrest." Certainly, there was "temporal and spatial proximity." The fact that at the very moment of the actual search the defendant was handcuffed and in the back seat of the patrol car does not dictate a contrary conclusion. Persons have been known to "slip" handcuffs, and, in this connection, the officer testified he "kept an eye" on the defendant even though he had been cuffed and placed in the rear seat of his patrol car. And, as already stated, in *Thornton*, the Supreme Court validated a search of an automobile as being an incident of a lawful arrest where the defendant was in the precise situation as the defendant in the present case.

Judgment reversed.

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge

- 11 -