Opinion filed July 13, 2006
















 
 
  
 
 







 
 
  
 
 




Opinion filed July 13, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00275-CR 

                                                    __________

 

                                   ROBERT HERNANDEZ, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 204th District Court

 

                                                          Dallas County, Texas

 

                                            Trial
Court Cause No. F03-27004-RQ

 



 

                                                                   O
P I N I O N

Robert Hernandez was charged with possession of
less than four grams of methamphetamine. 
He filed a pretrial motion to suppress challenging the use of drugs
seized during his arrest.  The trial
court conducted an evidentiary hearing and denied the motion.  Hernandez waived a jury trial.  The trial court found Hernandez guilty and
sentenced him to five years community supervision.  Hernandez appeals the trial court=s suppression ruling.  We find no error and affirm.

                                                              I.
Background Facts








Officer Daniel P. Colasanto, a narcotics officer
with the City of Garland Police Department, and Patrol Officer William Nies
went to Jennifer Epler=s
apartment to arrest her on an outstanding warrant.  Epler answered the door.  The officers advised her that she had an
outstanding warrant and that she was under arrest.  Epler asked to get a drink and a pair of
shoes.  The officers consented and
followed Epler into her apartment. 
Hernandez was standing in Epler=s
living room.  Officer Colasanto
accompanied Epler to get her shoes. 
Officer Colasanto had some prior experience with Hernandez, and he told
Officer Nies to watch him.

Hernandez was standing in front of a couch.  He walked to the back of the couch, picked up
a newspaper, and dropped it on the couch. 
Hernandez then moved the newspaper as if he was trying to conceal
something.  Officer Nies asked Hernandez
what he was trying to cover up. 
Hernandez responded, ANothing.@ 
When Officer Nies told Hernandez to move the paper, he did by moving it
one inch.  Officer Nies told Hernandez to
step back. Officer Nies picked up the paper and found a glass pipe used to
smoke narcotics and a glasses holder or container.  Officer Nies opened up the container and
found baggies with small white pills and another pipe.

Officer Colasanto immediately took Hernandez into
custody.  Hernandez was cuffed, patted
down for weapons, and forced to his knees. 
Officer Colasanto asked Epler if there were any more drugs or drug
paraphernalia in the apartment.  She said
no and consented to a search of her apartment.

The officers found a backpack on the living room
floor next to the couch.  When the
officers first entered the apartment, the backpack was within Hernandez=s reach.  But, when Hernandez was arrested, it was the
length of the couch away from him. 
Officer Nies testified at the suppression hearing that Hernandez
identified the backpack as his.

Hernandez also testified at the suppression
hearing. He denied telling the officers that the backpack was his. He testified
that it did not belong to him and that the only thing he brought with him to
Epler=s
apartment was a day planner.  He also
denied any knowledge of drugs or drug paraphernalia in the apartment.








The officers did not ask Hernandez for permission
to search the backpack.  Neither officer
testified that Hernandez ever made a move for the backpack.  The backpack was zipped closed.  Officer Nies opened and searched the backpack
and found baggies containing methamphetamine. Hernandez was taken to the police
station for booking.  There, additional
methamphetamine was found in Hernandez=s
pocket.  Hernandez was charged with
possession of the methamphetamine found in the backpack and in his pocket but
not with possession of the drugs or drug paraphernalia found on the couch.

                                                                       II.
Issues

Hernandez presents one issue on appeal contending
that the trial court erred by overruling his motion to suppress the backpack
search.

                                                            III.
Standard of Review

A trial court=s
ruling on a motion to suppress is reviewed for an abuse of discretion.  Balentine v. State, 71 S.W.3d 763, 768
(Tex. Crim.
App. 2002). We afford almost total deference to the trial court=s determinations of historical facts
and credibility and review de novo determinations that do not turn on an
evaluation of credibility and demeanor.  Johnson
v. State, 68 S.W.3d 644, 652-53 (Tex.
Crim. App. 2002).  The evidence is viewed
in the light most favorable to the trial court=s
ruling, and it is assumed that the trial court made implicit findings of fact
supported in the record.  The trial court=s decision will be sustained if it is
correct on any theory of law applicable to the case.  Swain v. State, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005).

                                                                   IV.
Discussion

The State argues initially that Hernandez has no
standing to complain of the backpack search because of his suppression hearing
testimony.  The State argues further that
the search was justified either because of Epler=s
consent or as a search incident to an arrest.

A. Standing

An accused has standing to challenge a search
under the Fourth Amendment only if he had a legitimate expectation of privacy
in the place searched.  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  The accused bears the burden of proof and
must establish a subjective expectation of privacy that society is prepared to
recognize as reasonable.  Smith v. Maryland, 442 U.S. 735, 740 (1979).








Among the factors courts are to consider when
determining whether a given claim of privacy is objectively reasonable is
whether the accused had a property or possessory interest in the place or item
searched.  Granados v. State, 85
S.W.3d 217, 223 (Tex.
Crim. App. 2002).[1]  The State argues that Hernandez cannot
satisfy his burden of proof because he testified at the suppression hearing
that the backpack was not his. 
Logically, there should be some consequence to Hernandez=s testimony.  But, the trial court did not believe
Hernandez because it found Hernandez guilty of possession.  The State made no attempt to separate the
methamphetamine found in Hernandez=s
pocket from that found in the backpack. 
Consequently, the trial court=s
judgment necessarily reflects the determination that it concluded the backpack
and the methamphetamine contained within it belonged to Hernandez.  The trial court is the sole trier of fact and
judge of the credibility of the witnesses as well as the weight to be given
their testimony.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 
The record adequately supports this factual determination.

Hernandez does not complain of the officers= entry into Epler=s apartment, Officer Nies=s discovery of the drugs and drug
paraphernalia on the couch, or their decision to arrest him.  His challenge is focused specifically on
Officer Nies=s
backpack search.  Hernandez had a
legitimate expectation of privacy while in Epler=s
apartment.  Minnesota
v. Olson, 495 U.S.
91, 97 (1990).  It is not unreasonable to
extend that expectation of privacy to personal items such as the backpack.  Consequently, a search of the backpack
infringes upon Hernandez=s
Fourth Amendment rights, and he has standing to challenge it.  See Lewis v. State, 664 S.W.2d 345, 348
(Tex. Crim. App. 1984) (passenger can contest search of automobile upon showing
that the search resulted from an infringement of his constitutional rights).

B.  Search
Incident To An Arrest

 Law
enforcement officials have long had the authority to conduct a warrantless
search of the person of the accused contemporaneous to a lawful arrest.  See Weeks v. United
 States, 232 U.S. 383, 392 (1914).  In Chimel v. California, 395 U.S. 752
(1969), the Supreme Court considered law enforcement officials= authority to search a home incident to
an arrest.  There, the court held that it
was reasonable for the arresting officer to search the person of the arrestee
to remove any weapons and seize any evidence that might otherwise be concealed
or destroyed.  The court also held that
it was reasonable to search any area into which the arrestee might reach for
the same purposes.  The court held that
this justification would not, however, allow for the routine search of any room
in the home other than the one in which the arrest occurs. Id. at 762-63.








Hernandez characterizes this as a Awingspan search@
and argues that, because he was handcuffed, on the floor, and the length of the
couch away from the backpack when it was searched, the justifications for a
search incident to an arrest do not apply. 
Subsequent Supreme Court decisions, however, indicate that the authority
to search is not defined by the arrestee=s
actual physical reach at the time of the search but, rather, by consideration
of the arrestee=s
proximity, temporal or spatial, to the area searched.

In New York v. Belton, 453 U.S. 454 (1981),
the court held that police officers arresting the occupant of a car were
authorized to search the entire passenger compartment of that car, including
any closed containers contained within. Id.
at 461.  In Thornton v. United States,
541 U.S. 615 (2004), the court held that police were authorized to search a
vehicle as a search incident to an arrest, even though the accused was arrested
after he had exited his vehicle and the search occurred while he was handcuffed
and in the back seat of the patrol car. 
Chief Justice Rehnquist wrote the majority opinion.  He recognized that it was unlikely that the
accused could have accessed a weapon from his car[2]
but determined that the Aneed
for a clear rule, readily understood by police officers and not depending on
differing estimates of what items were or were not within reach of an arrestee
at any particular moment@
justified allowing the arresting officer to search the entire passenger
compartment of the vehicle.  Id. at 622-23.

Consequently, the fact that Hernandez was unlikely
to reach the backpack is a relevant inquiry, but it is not outcome
determinative.  Chimel drew a
distinction between the room in which the arrest occurred and the remainder of
the house.  Belton and Thornton
focused on the arrestee=s
temporal and spatial connection to the search area.  In this case, the relevant events all took
place within Epler=s living
room and within a short period of time. 
Hernandez was in the living room when the police officers arrived and
remained there until his arrest.  The
backpack was in the living room at all times, and the officers did not seize
any item from any room other than the living room.  We find, therefore, that the police officers
did not exceed their authority to conduct a search incident to an arrest merely
because the backpack was a couch length away from Hernandez at the time of his
arrest.  See Voelkel v. State, 629
S.W.2d 243, 246 (Tex. App.CFort
Worth 1982), aff=d,
717 S.W.2d 314 (Tex. Crim. App. 1986) (officers could search the motel room in
which the defendant was arrested as a search incident to an arrest).








The officers=
authority to search is also not defeated by the fact that the backpack was a
sealed, personal item.  In Chimel,
395 U.S.
at 763, the court noted that a gun concealed in a drawer can be as dangerous as
one concealed in the arrestee=s
clothing.  Subsequent decisions have
allowed searches of a variety of personal items.  See, e.g., United States v. Ivy,
973 F.2d 1184, 1187 (5th Cir. 1992) (briefcase); Oles v. State, 993
S.W.2d 103, 109 (Tex. Crim. App. 1999) (clothing); Satterwhite v. State,
726 S.W.2d 81, 87 (Tex. Crim. App. 1986), rev=d
on other grounds, 486 U.S. 249 (1988) (glove compartment); Ashton v.
State, 931 S.W.2d 5, 8 (Tex. App.CHouston
[1st Dist.] 1996, pet. ref=d)
(purse).  Furthermore, it makes no
difference whether the backpack was open or closed.  A search incident to an arrest is not
justified by the arrestee=s
lack of a privacy interest.  The lawful
arrest itself justifies the infringement of any privacy interest.  Belton, 453 U.S. at 461.

We find that the trial court did not abuse its
discretion by denying Hernandez=s
motion to suppress.  The officers were
entitled to search the backpack incident to Hernandez=s
arrest.  This holding makes it
unnecessary for us to consider the State=s
argument that Epler=s consent
to a search of her apartment authorized the police to open Hernandez=s backpack, and we express no opinion
on that question.  This holding also
makes it unnecessary for us to address Hernandez=s
argument that it was inappropriate for the police to seize the backpack for
safekeeping rather than simply leaving it at Epler=s
apartment; thus, it is unnecessary for us to determine whether the backpack was
properly searched to develop an inventory. 

                                                                     V.
Holding

The judgment of the trial court is affirmed.  

 

 

RICK STRANGE

JUSTICE

 

July 13, 2006

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Other
relevant factors include: whether the accused was legitimately in the place
searched; whether the accused had complete dominion or control and the right to
exclude others; whether prior to the intrusion, he took normal precautions customarily
taken by those seeking privacy; whether he put the place to some private use;
and whether his claim of privacy is consistent with historical notions of
privacy.  Granados, 85 S.W.3d at
223.





     [2]Justices
Scalia and Ginsburg concurred in the judgment. 
They described the risk that the accused might grab a weapon or
evidentiary item from his car as Aremote in
the extreme.@  541 U.S. at 625.