Justice Breyer,
dissenting.
I agree with Justice Alito that New York v. Belton, 453 U. S. 454 (1981), is best read as setting forth a bright-line rule that permits a warrantless search of the passenger compartment of an automobile incident to the lawful arrest of an occupant — regardless of the danger the arrested individual in fact poses. I also agree with Justice Stevens, however, that the rule can produce results divorced from its underlying Fourth Amendment rationale. Compare Belton, supra, with Chimel v. California, 395 U. S. 752, 764 (1969) (explaining that the rule allowing contemporaneous searches is justified by the need to prevent harm to a police officer or destruction of evidence of the crime). For that reason I would look for a better rule — were the question before us one of first impression.
The matter, however, is not one of first impression, and that fact makes a substantial difference. The Belton rule has been followed not only by this Court in Thornton v. United States, 541 U. S. 615 (2004), but also by numerous other courts. Principles of stare decisis must apply, and *355 those who wish this Court to change a well-established legal precedent — where, as here, there has been considerable reliance on the legal rule in question — bear a heavy burden. Cf. Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 918-926 (2007) (Breyer, J., dissenting). I have not found that burden met. Nor do I believe that the other considerations ordinarily relevant when determining whether to overrule a case are satisfied. I consequently join Justice Alito’s dissenting opinion with the exception of Part II-E.
Justice Alito, with whom The Chief Justice and Justice Kennedy join, and with whom Justice Breyer joins except as to Part II-E, dissenting.
Twenty-eight years ago, in New York v. Belton, 453 U. S. 454, 460 (1981), this Court held that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” (Footnote omitted.) Five years ago, in Thornton v. United States, 541 U. S. 615 (2004) — a case involving a situation not materially distinguishable from the situation here — the Court not only reaffirmed but extended the holding of Belton, making it applicable to recent occupants. Today’s decision effectively overrules those important decisions, even though respondent Gant has not asked us to do so.
To take the place of the overruled precedents, the Court adopts a new two-part rule under which a police officer who arrests a vehicle occupant or recent occupant may search the passenger compartment if (1) the arrestee is within reaching distance of the vehicle at the time of the search or (2) the officer has reason to believe that the vehicle contains evidence of the offense of arrest. Ante, at 351. The first part of this new rule may endanger arresting officers and is truly endorsed by only four Justices; Justice Scalia joins solely for the purpose of avoiding a “4-to-l-to-4 opinion.” Ante, at *356 354 (concurring opinion). The second part of the new rule is taken from Justice Scalia’s separate opinion in Thornton without any independent explanation of its origin or justification and is virtually certain to confuse law enforcement officers and judges for some time to come. The Court’s decision will cause the suppression of evidence gathered in many searches carried out in good-faith reliance on well-settled ease law, and although the Court purports to base its analysis on the landmark decision in Chimel v. California, 395 U. S. 752 (1969), the Court’s reasoning undermines Chimel. I would follow Belton, and I therefore respectfully dissent.
I
Although the Court refuses to acknowledge that it is overruling Belton and Thornton, there can be no doubt that it does so.
In Belton, an officer on the New York Thruway removed the occupants from a car and placed them under arrest but did not handcuff them. See 453 U. S., at 456; Brief for Petitioner in New York v. Belton, O. T. 1980, No. 80-328, p. 3. The officer then searched a jacket on the car’s back seat and found drugs. 453 U. S., at 455. By a divided vote, the New York Court of Appeals held that the search of the jacket violated Chimel, in which this Court held that an arresting officer may search the area within an arrestee’s immediate control. See State v. Belton, 50 N. Y. 2d 447, 407 N. E. 2d 420 (1980). The judges of the New York Court of Appeals disagreed on the factual question whether the Belton arrestees could have gained access to the car. The majority thought that they could not have done so, id., at 452, n. 2, 407 N. E. 2d, at 423, n. 2, but the dissent thought that this was a real possibility, id., at 453, 407 N. E. 2d, at 424 (opinion of Gabrielli, J.).
Viewing this disagreement about the application of the Chimel rule as illustrative of a persistent and important problem, the Belton Court concluded that “ ‘[a] single famil-
*357 iar standard’ ” was “ ‘essential to guide police officers’ ” who make roadside arrests. 453 U. S., at 458 (quoting Dunaway v. New York, 442 U. S. 200, 213-214 (1979)). The Court acknowledged that articles in the passenger compartment of a car are not always within an arrestee’s reach, but “[i]n order to establish the workable rule this category of cases requires,” the Court adopted a rule that categorically permits the search of a car’s passenger compartment incident to the lawful arrest of an occupant. 453 U. S., at 460.
The precise holding in Belton could not be clearer. The Court stated unequivocally: “[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” Ibid, (footnote omitted).
Despite this explicit statement, the opinion of the Court in the present case curiously suggests that Belton may reasonably be read as adopting a holding that is narrower than the one explicitly set out in the Belton opinion, namely, that an officer arresting a vehicle occupant may search the passenger compartment “when the passenger compartment is within an arrestee’s reaching distance.” Ante, at 341 (emphasis in original). According to the Court, the broader reading of Belton that has gained wide acceptance “may be attributable to Justice Brennan’s dissent.” Ante, at 341.
Contrary to the Court’s suggestion, however, Justice Brennan’s Belton dissent did not mischaracterize the Court’s holding in that case or cause that holding to be misinterpreted. As noted, the Belton Court explicitly stated precisely what it held. In Thornton, the Court recognized the scope of Belton’s holding. See 541 U. S., at 620. So did Justice Scalia’s separate opinion. See id., at 625 (opinion concurring in judgment) (“In [Belton] we set forth a bright-line rule for arrests of automobile occupants, holding that... a search of the whole [passenger] compartment is justified in every case”). So does Justice Scalia’s opinion in the pres *358 ent case. See ante, at 351 (Belton and Thornton held that “arresting officers may always search an arrestee’s vehicle in order to protect themselves from hidden weapons”). This “bright-line rule” has now been interred.
II
Because the Court has substantially overruled Belton and Thornton, the Court must explain why its departure from the usual rule of stare decisis is justified. I recognize that stare decisis is not an “inexorable command,” Payne v. Tennessee, 501 U. S. 808, 828 (1991), and applies less rigidly in constitutional cases, Glidden Co. v. Zdanok, 370 U. S. 530, 543 (1962) (plurality opinion). But the Court has said that a constitutional precedent should be followed unless there is a “ ‘special justification’ ” for its abandonment. Dickerson v. United States, 530 U. S. 428, 443 (2000). Relevant factors identified in prior cases include whether the precedent has engendered reliance, id., at 442, whether there has been an important change in circumstances in the outside world, Randall v. Sorrell, 548 U. S. 230, 244 (2006) (plurality opinion); Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 412 (1932) (Brandéis, J., dissenting), whether the precedent has proved to be unworkable, Vieth v. Jubelirer, 541 U. S. 267, 306 (2004) (plurality opinion) (citing Payne, supra, at 827), whether the precedent has been undermined by later decisions, see, e. g., Patterson v. McLean Credit Union, 491 U. S. 164, 173-174 (1989), and whether the decision was badly reasoned, Vieth, supra, at 306 (plurality opinion). These factors weigh in favor of retaining the rule established in Belton.
A
Reliance. While reliance is most important in “cases involving property and contract rights,” Payne, supra, at 828, the Court has recognized that reliance by law enforcement officers is also entitled to weight. In Dickerson, the Court held that principles of stare decisis “weighted]” heavily *359 against overruling Miranda v. Arizona, 384 U. S. 436 (1966), because the Miranda rule had become “embedded in routine police practice.” 530 U. S., at 443.
If there was reliance in Dickerson, there certainly is substantial reliance here. The Belton rule has been taught to police officers for more than a quarter century. Many searches — almost certainly including more than a few that figure in cases now on appeal — were conducted in scrupulous reliance on that precedent. It is likely that, on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the Belton rule.
The opinion of the Court recognizes that “Belton has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years.” Ante, at 349. But for the Court, this seemingly counts for nothing. The Court states that “[w]e have never relied on stare decisis to justify the continuance of an unconstitutional police practice,” ante, at 348, but of course the Court routinely relies on decisions sustaining the constitutionality of police practices without doing what the Court has done here — sua sponte considering whether those decisions should be overruled. And the Court cites no authority for the proposition that stare decisis may be disregarded or provides only lesser protection when the precedent that is challenged is one that sustained the constitutionality of a law enforcement practice.
The Court also errs in arguing that the reliance interest that was given heavy weight in Dickerson was not “police reliance on a rule requiring them to provide warnings but to the broader societal reliance on that individual right.” Ante, at 350. The Dickerson opinion makes no reference to “societal reliance,” and petitioner in that case contended that there had been reliance on Miranda because, among other things, “[f]or nearly thirty-five years, Miranda’s requirements ha[d] shaped law enforcement training [and] police *360 conduct.” See Brief for Petitioner in Dickerson v. United States, O. T. 1999, No. 99-5525, p. 33.
B
Changed circumstances. Abandonment of the Belton rule cannot be justified on the ground that the dangers surrounding the arrest of a vehicle occupant are different today than they were 28 years ago. The Court claims that “[w]e now know that articles inside the passenger compartment are rarely ‘within “the area into which an arrestee might reach,”’” ante, at 350, but surely it was well known in 1981 that a person who is taken from a vehicle, handcuffed, and placed in the back of a patrol car is unlikely to make it back into his own car to retrieve a weapon or destroy evidence.
C
Workability. The Belton rule has not proved to be unworkable. On the contrary, the rule was adopted for the express purpose of providing a test that would be relatively easy for police officers and judges to apply. The Court correctly notes that even the Belton rule is not perfectly clear in all situations. Specifically, it is sometimes debatable whether a search is or is not contemporaneous with an arrest, ante, at 345-346, and n. 6, but that problem is small in comparison with the problems that the Court’s new two-part rule will produce.
The first part of the Court’s new rule — which permits the search of a vehicle’s passenger compartment if it is within an arrestee’s reach at the time of the search — reintroduces the same sort of case-by-case, fact-specific decisionmaking that the Belton rule was adopted to avoid. As the situation in Belton illustrated, there are cases in which it is unclear whether an arrestee could retrieve a weapon or evidence in the passenger compartment of a car.
Even more serious problems will also result from the second part of the Court’s new rule, which requires officers *361 making roadside arrests to determine whether there is reason to believe that the vehicle contains evidence of the crime of arrest. What this rule permits in a variety of situations is entirely unclear.
D
Consistency with later cases. The Belton bright-line rule has not been undermined by subsequent cases. On the contrary, that rule was reaffirmed and extended just five years ago in Thornton.
E
Bad reasoning. The Court is harshly critical of Belton’s reasoning, but the problem that the Court perceives cannot be remedied simply by overruling Belton. Belton represented only a modest — and quite defensible — extension of Chimel, as I understand that decision.
Prior to Chimel, the Court’s precedents permitted an arresting officer to search the area within an arrestee’s “possession” and “control” for the purpose of gathering evidence. See 395 U. S., at 759-760. Based on this “abstract doctrine,” id., at 760, n. 4, the Court had sustained searches that extended far beyond an arrestee’s grabbing area. See United States v. Rabinowitz, 339 U. S. 56 (1950) (search of entire office); Harris v. United States, 331 U. S. 145 (1947) (search of entire apartment).
The Chimel Court, in an opinion written by Justice Stewart, overruled these cases. Concluding that there are only two justifications for a warrantless search incident to arrest — officer safety and the preservation of evidence — the Court stated that such a search must be confined to “the arrestee’s person” and “the area from within which he might gain possession of a weapon or destructible evidence.” 395 U. S., at 762-763.
Unfortunately, Chimel did not say whether “the area from within which [an arrestee] might gain possession of a weapon or destructible evidence” is to be measured at the time of *362 the arrest or at the time of the search, but unless the Chimel rule was meant to be a specialty rule, applicable to only a few unusual cases, the Court must have intended for this area to be measured at the time of arrest.
This is so because the Court can hardly have failed to appreciate the following two facts. First, in the great majority of cases, an officer making an arrest is able to handcuff the arrestee and remove him to a seeure place before conducting a search incident to the arrest. See ante, at 343, n. 4 (stating that it is “the rare case” in which an arresting officer cannot secure an arrestee before conducting a search). Second, because it is safer for an arresting officer to secure an arrestee before searching, it is likely that this is what arresting officers do in the great majority of eases. (And it appears, not surprisingly, that this is in fact the prevailing practice.[1]) Thus, if the area within an arrestee's reach were assessed, not at the time of arrest, but at the time of the search, the Chimel rule would rarely come into play.
Moreover, if the applicability of the Chimel rule turned on whether an arresting officer chooses to seeure an arrestee prior to conducting a search, rather than searching first and securing the arrestee later, the rule would “create a perverse incentive for an arresting officer to prolong the period during whieh the arrestee is kept in an area where he could pose a danger to the officer.” United States v. Abdul-Saboor, 85 F. 3d 664, 669 (CADC 1996). If this is the law, the D. C. Circuit observed, “the law would truly be, as Mr. Bumble said, ‘a ass.'” Ibid. See also United States v. Tejada, 524 F. 3d 809, 812 (CA7 2008) (“[I]f the police could lawfully have searched the defendant’s grabbing radius at the moment of arrest, he has no legitimate complaint if, the better to protect themselves from him, they first put him outside that radius”).
I do not think that this is what the Chimel Court intended. Handcuffs were in use in 1969. The ability of arresting of *363 ficers to secure arrestees before conducting a search — and their incentive to do so — are facts that can hardly have escaped the Court’s attention. I therefore believe that the Chimel Court intended that its new rule apply in cases in which the arrestee is handcuffed before the search is conducted.
The Belton Court, in my view, proceeded on the basis of this interpretation of Chimel. Again speaking through Justice Stewart, the Belton Court reasoned that articles in the passenger compartment of a car are “generally, even if not inevitably,” within an arrestee’s reach. 453 U. S., at 460. This is undoubtedly true at the time of the arrest of a person who is seated in a car but plainly not true when the person has been removed from the car and placed in handcuffs. Accordingly, the Belton Court must have proceeded on the assumption that the Chimel rule was to be applied at the time of arrest. And that is why the Belton Court was able to say that its decision “in no way alter[ed] the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.” 453 U. S., at 460, n. 3. Viewing Chimel as having focused on the time of arrest, Belton’s only new step was to eliminate the need to decide on a case-by-case basis whether a particular person seated in a car actually could have reached the part of the passenger compartment where a weapon or evidence was hidden. For this reason, if we are going to reexamine Belton, we should also reexamine the reasoning in Chimel on which Belton rests.
F
The Court, however, does not reexamine Chimel and thus leaves the law relating to searches incident to arrest in a confused and unstable state. The first part of the Court’s new two-part rule — which permits an arresting officer to search the area within an arrestee’s reach at the time of the search — applies, at least for now, only to vehicle occupants *364 and recent occupants, but there is no logical reason why the same rule should not apply to all arrestees.
The second part of the Court’s new rule, which the Court takes uncritically from Justice Scalia’s separate opinion in Thornton, raises doctrinal and practical problems that the Court makes no effort to address. Why, for example, is the standard for this type of evidence-gathering search “reason to believe” rather than probable cause? And why is this type of search restricted to evidence of the offense of arrest? It is true that an arrestee’s vehicle is probably more likely to contain evidence of the crime of arrest than of some other crime, but if reason-to-believe is the governing standard for an evidence-gathering search incident to arrest, it is not easy to see why an officer should not be able to search when the officer has reason to believe that the vehicle in question possesses evidence of a crime other than the crime of arrest.
Nor is it easy to see why an evidence-gathering search incident to arrest should be restricted to the passenger compartment. The Belton rule was limited in this way because the passenger compartment was considered to be the area that vehicle occupants can generally reach, 453 U. S., at 460, but since the second part of the new rule is not based on officer safety or the preservation of evidence, the ground for this limitation is obscure.[2]
*365 III
Respondent in this case has not asked us to overrule Belton, much less Chimel. Respondent’s argument rests entirely on an interpretation of Belton that is plainly incorrect, an interpretation that disregards Belton’s explicit delineation of its holding. I would therefore leave any reexamination of our prior precedents for another day, if such a reexamination is to be undertaken at all. In this case, I would simply apply Belton and reverse the judgment below.

 See Moskovitz, A Rule in Search of a Reason: An Empirical Reexamination of Chimel and Belton, 2002 Wis. L. Rev. 657, 665.

 I do not understand the Court’s decision to reach the following situations. First, it is not uncommon for an officer to arrest some but not all of the occupants of a vehicle. The Court’s decision in this case does not address the question whether in such a situation a search of the passenger compartment may be justified on the ground that the occupants who are not arrested could gain access to the car and retrieve a weapon or destroy evidence. Second, there may be situations in which an arresting officer has cause to fear that persons who were not passengers in the car might attempt to retrieve a weapon or evidence from the car while the officer is still on the scene. The decision in this case, as I understand it, does not address that situation either.