**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36337**

| | | |
|---|---|---|
| TERRY HOSKINS, | ) | |
| | ) | **2010 Opinion No. 45** |
| Petitioner-Appellant, | ) | |
| | ) | **Filed: July 2, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Order summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

Terry Hoskins was convicted of possession of methamphetamine that police found in his vehicle. He subsequently filed a petition for post-conviction relief in which he alleged his defense attorney had incompetently overlooked a basis for suppression of the methamphetamine. The district court dismissed Hoskins' petition, and he appeals. We affirm.

**I.**

**FACTS AND PROCEDURE**

In March 2007, two police officers went to Hoskins' home intending to take him into custody on two misdemeanor arrest warrants. When they arrived, Hoskins was sitting in his vehicle, working on a broken turn signal. The officers ordered Hoskins out of the vehicle, arrested and handcuffed him, and took him to the patrol car. As Hoskins was being handcuffed, an officer began a search of Hoskins' vehicle pursuant to the arrest and discovered methamphetamine. Hoskins pleaded guilty to possession of methamphetamine and did not

1

appeal. A little less than one year later, Hoskins filed a petition for post-conviction relief. Among other things, he asserted that his attorney provided ineffective assistance by omitting to file a motion to suppress the evidence found in the vehicle.

After issuing a notice of intent to dismiss, the district court summarily dismissed this claim, reasoning that defense counsel's performance was not deficient because, had a suppression motion been filed, it would not have been successful inasmuch as the search was a lawful search incident to Hoskins' arrest under then-existing Idaho jurisprudence. Hoskins appeals, asserting that a decision of the United States Supreme Court, issued after Hoskins' conviction, establishes that a suppression motion would have had merit and that his defense attorney was therefore deficient in failing to file such a motion.

## II.

## STANDARDS OF REVIEW

In order to prevail on an ineffective assistance of counsel claim, a post-conviction applicant must demonstrate both that his attorney's performance was deficient, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995); *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct. App. 1989). To show deficient performance, a defendant must overcome the strong presumption that counsel's performance was adequate by demonstrating "that counsel's representation did not meet objective standards of competence." *Roman v. State*, 125 Idaho 644, 648-49, 873 P.2d 898, 902-03 (Ct. App. 1994). If a defendant succeeds in establishing that counsel's performance was deficient, he must also prove the prejudice element by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *See also Roman*, 125 Idaho at 649, 873 P.2d at 903. In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the Court examines the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006); *Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial

court, is generally determinative of both prongs of the *Strickland* test. *Thomas*, 145 Idaho at 770, 185 P.3d at 926.

## III.

## ANALYSIS

Hoskins contends that if his defense attorney had filed a suppression motion, the methamphetamine found in his car should have been suppressed because the warrantless search of his car violated the Fourth Amendment to the United States Constitution. The Fourth Amendment prohibits government agents from conducting unreasonable searches of persons or property. Searches that have not been authorized by a search warrant are presumed to be unreasonable unless they fall within one of the recognized exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Bishop*, 146 Idaho 804, 815, 203 P.3d 1203, 1214 (2009).

Hoskins implicitly acknowledges that his defense attorney likely determined not to file a suppression motion because he concluded that under Fourth Amendment jurisprudence, the warrantless search of Hoskins' vehicle would be upheld by Idaho courts under the warrant exception for searches conducted incident to the arrest of a vehicle occupant. Hoskins does not dispute that in view of then-existing Idaho appellate court decisions interpreting and applying United States Supreme Court precedent on this warrant exception, defense counsel would have been correct. Hoskins argues, however, that a subsequent decision of the United States Supreme Court, *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009), establishes that the Idaho decisions on which defense counsel relied were erroneous and that a suppression motion in his case therefore would have been meritorious.

Addressing this issue requires that we review the evolution of the warrant exception for searches of vehicles incident to the arrest of an occupant. In *Chimel v. California*, 395 U.S. 752, 762-63 (1969), the United States Supreme Court held that police may conduct a warrantless search of a person incident to a lawful arrest for the purposes of preservation of evidence and officer safety. Specifically, the Court held:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area

3

into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'--construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.*

In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court applied *Chimel* in the context of an automobile search. Recognizing that *Chimel* authorized, incident to a lawful custodial arrest, warrantless searches of not only the person arrested but also the immediately surrounding area, the *Belton* Court concluded that "no straightforward rule" had emerged from lower courts' application of *Chimel* regarding the "proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Belton*, 453 U.S. at 457-59. The Court determined that because the passenger compartment of an automobile is "generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m], . . . .' when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460 (quoting *Chimel*, 395 U.S. at 763). Idaho appellate courts interpreted *Belton* as permitting the search of a vehicle incident to an occupant's arrest even after the occupant had been handcuffed and placed in a patrol car or otherwise secured at a distance from the vehicle. *State v. Charpentier*, 131 Idaho 649, 651-53, 962 P.2d 1033, 1035-36 (1998); *State v. Smith*, 120 Idaho 77, 80, 813 P.2d 888, 891 (1991); *State v. Champagne*, 137 Idaho 677, 680, 52 P.3d 321, 324 (Ct. App. 2002); *State v. McIntee*, 124 Idaho 803, 805, 864 P.2d 641, 643 (Ct. App. 1993).

In 2004, in *Thornton v. United States*, 541 U.S. 615, 623 (2004), the Supreme Court reaffirmed that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." However, Justice Scalia's concurring opinion in *Thornton* severely criticized the majority's reliance on officer safety and preservation of evidence as justifications for a search when the arrestee is handcuffed and secured in a patrol car. *Id.* at 625-29 (Scalia, J., concurring in judgment). This concurrence, in which Justice Ginsburg joined, attacked the theoretical underpinnings of *Belton* and asserted that "[i]f *Belton* searches are

4

justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." *Thornton*, 541 U.S. at 629. Justice Scalia concluded that *Belton* searches should be limited "to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," but he concurred in the judgment because that circumstance was present in the case before the Court. *Id.* at 632. Justice O'Connor also penned a concurrence in the judgment, suggesting that "*Belton's* shaky foundation" had eroded the law and might be modified were the issue squarely presented. *Id.* at 624-25. Two dissenting justices, Justices Stevens and Souter, argued that *Belton* should be overruled. *Id.* at 632-36.

Five years later in 2009, after Justice O'Connor and Chief Justice Rehnquist had been replaced by Chief Justice Roberts and Justice Alito, the United States Supreme Court issued its decision in *Gant*. In a five-to-four opinion authored by Justice Stevens, the Court responded to the "chorus" that had called for the Supreme Court to revisit *Belton*. The Court rejected a broad reading of *Belton* that would "authoriz[e] a vehicle search incident to every recent occupant's arrest." *Gant*, ___ U.S. at ___, 129 S. Ct. at 1716-19. The Court stated that the search incident to arrest exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* The Court continued:

> In *Chimel,* we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'--construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.

*Id.* at ___, 129 S. Ct. at 1716 (internal citations omitted). The Court acknowledged that many jurisdictions, like Idaho, had understood *Belton* "to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search," *Gant*, ___ U.S. at ___, 129 S. Ct. at 1718, but held that this interpretation of *Belton* was incorrect. This broad application of *Belton*, the Court said, would "untether the rule from the justifications underlying the *Chimel* exception--a result clearly incompatible with

5

our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.'" *Gant*, ___ U.S. at ___, 129 S. Ct. at 1719. Thus, the *Gant* Court held that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.*[1] The Court also announced a new warrant exception that is separate and distinct from the "reaching distance" exception announced in *Chimel*: "Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, ___ U.S. at ___, 129 S.Ct. at 1719 (quoting *Thornton*, 541 U.S. at 632) (Scalia, J., concurring in judgment)).

It appears that if the standards announced in *Gant* were applied, a suppression motion might have merit in Hoskins' case. That does not mean, however, that Hoskins has shown that he received ineffective assistance of counsel. The Sixth Amendment entitles criminal defendants to reasonably competent counsel, but not perfect or prescient counsel. *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) (holding that counsel's performance was not deficient for failing to predict future developments in the law); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981) ("[C]ounsel is normally not expected to foresee future new developments in the law . . . ."); *Schoger v. State*, 148 Idaho 622, 630, 226 P.3d 1269, 1277 (2010) (observing that only in a very rare case would counsel's performance be deemed ineffective for failing to make an objection that would have been overruled under then-prevailing law).

Hoskins argues that because the *Gant* majority opinion says that it is not changing, modifying, or overruling *Belton* but only correcting the erroneous interpretation of *Belton* by lower courts, his defense attorney's deficiency was failing to raise the *existing* law under *Belton*, not failing to anticipate a *change* in the law. We are not persuaded. While the *Gant* opinion may not have modified the Supreme Court majority's own understanding of their ruling in *Belton*, it certainly changed the state of the law in Idaho and many other jurisdictions that had interpreted *Belton* as allowing the search of a vehicle after the occupant had been removed from the

---

[1] Which, the majority explained, would be the "rare case." *Gant*, ___ U.S. at ___, 129 S. Ct. at 1719 n.4.

immediate vicinity of the vehicle. Even if that interpretation of *Belton* was in error, it was the state of the law under which all Idaho courts operated until issuance of the *Gant* opinion some seventeen months after Hoskins' conviction. Indeed, according to the majority opinion in *Gant*, the same broad interpretation of *Belton* "predominated" in American jursidictions. *Gant*, ___ U.S. at ____, 129 S. Ct. at 1718. We note, in addition, that the four dissenting justices viewed the *Gant* majority opinion as overruling or modifying *Belton*, not merely correcting an improper interpretation of *Belton* that had been employed in the lower courts. If four justices of the United States Supreme Court view *Gant* as having changed the law, an Idaho defense attorney can hardly be faulted for failing to advance the *Gant* majority's interpretation of *Belton* before *Gant* was decided.

Hoskins also argues that the dissent of two justices in *Thornton* and the concurring opinions of Justice Scalia and Justice O'Connor in that case foreshadowed the *Gant* decision and were sufficient to alert his defense attorney that a viable suppression motion could be brought by urging Idaho courts to recognize that their broad interpretation of *Belton* was incorrect. That is, Hoskins contends that his own attorney should have done what Gant's attorney did in the Arizona state court proceedings that ultimately led to the United States Supreme Court's decision in that case. To accept this argument would be to expect an attorney to have divined from the various opinions in *Thornton* a direction of the Supreme Court that eluded enumerable appellate court judges across the country who reexamined the *Belton* rule after *Thornton*. As a footnote in the *Gant* opinion acknowledges, appellate court approval of vehicle searches incident to arrest after the arrestee had been handcuffed and secured in a parole car did not "abate" after the Supreme Court decided *Thornton*. *See Gant*, ___ U.S. at ___ n.3, 129 S. Ct. at 1718 n.3 and cases cited therein.

Despite his protests to the contrary, Hoskins is asking this Court to hold his defense counsel deficient for failing to anticipate future developments in the law. The constitutional standard for effective assistance of counsel does not demand such prescience. Accordingly, we agree with the district court's assessment that Hoskins' claim for ineffective assistance of counsel is without merit.

The district court's order dismissing Hoskins' petition for post-conviction relief is affirmed. No costs or attorney fees to either party.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**

7